IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:05-cv-668-PSF-MEH

UNITED STATES COMMODITY
FUTURES TRADING COMMISSION,

        Plaintiff,

v.

ANDREW KENNEDY RICHMOND,

        Defendant.
_____

**PLAINTIFF'S REPLY BRIEF**
_____

Pursuant to Fed. R. Civ. P. 56(a) and D.C.COLO.LCivR 56.1, Plaintiff hereby files its Reply Brief to address matters raised in Defendant's Response to Motion for Summary Judgment (Doc. # 29) ("Response Brief")[1].

**1. The Court Should Not Consider Defendant's Self-Serving Declaration**

As Exhibit A-7 to his Response Brief, Defendant filed a declaration (signed on September 26, 2006) wherein he explicitly and unequivocally denied directing, instructing, pressuring, requesting, or coercing Dan Fox, Clayton Stanley, Tamara Osborn, Christine Odell, or anyone else for that matter, to report false, misleading, or knowingly inaccurate reports to *Gas Daily* or any other publication. Resp. Br., Ex. A-7 (Richmond Decl.) ¶¶ 3-7. This very recent,

---

[1] On page 24 of his Response Brief, Defendant asserts that the Commission has abandoned its aiding and abetting claim brought pursuant to section 13(a) of the CEA, 7 U.S.C. 13c(a). Contrary to Defendant's unsupported statement, not filing a motion for summary judgment on a claim in no way equates to abandonment of that claim. The Commission has not, merely by virtue of not seeking summary judgment, abandoned that claim; the Commission merely is not seeking summary judgment on that claim.

self-serving declaration, however, is markedly inconsistent with Defendant's September 8, 2004 sworn testimony and Defendant's May 31, 2006 sworn interrogatory responses.[2] The recency of the declaration and its explicit and unequivocal denials, when considered in light of the Defendant's prior sworn testimony and sworn interrogatory answers, reveal the declaration to have been filed in order to create a sham fact issue. As such the Court should disregard Defendant's self-serving declaration.

The Tenth Circuit requires the non-moving party to submit affidavits "based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient." *Hall v. Bellmon*, 935 F.3d 1106, 1111 (10th Cir. 1991). A self-serving affidavit that conflicts with prior sworn testimony should be disregarded if the affidavit is found to have been submitted in an attempt to create a sham fact issue. *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986). Factors relevant to whether Defendant's declaration attempts to raise a sham fact issue include: whether Defendant was cross examined during his earlier testimony; whether Defendant had access to the pertinent evidence at the time of his earlier testimony or whether the declaration was based on newly discovered, and whether Defendant's earlier testimony reflects confusion which the declaration attempts to explain. *Id.*

A review of the *Franks* factors leads to the conclusion that Defendant's declaration should be disregarded as attempting to raise a sham fact issue. In his 2004 sworn testimony, Defendant was clear an unequivocal that he could not recall whether he had certain conversations with Christine Odell, Tamara Osborn, and Clayton Stanley. Moreover, in his May 2006 sworn

---

[2] On page 6 of his Response Brief, Defendant writes, "In the instant case, the Commission failed to serve interrogatories on Mr. Richmond . . . ." Despite this curious assertion, attached as Exhibit 9 are Defendant's May 31, 2006 sworn interrogatory answers, interrogatories the Commission served upon Defendant on April 10, 2006.

interrogatory answers, Defendant again could not recall whether he had those conversations. Miraculously, in September 2006, when facing a motion for summary judgment, Defendant's memory returned and he was able to swear under penalty of perjury that he did not have any of the offending conversations.

More specifically, when asked about whether he ever instructed Ms. Odell to inflate volumes for transactions she reported to *Gas Daily*, Defendant testified: "I don't know if she is telling the truth or not telling the truth. I mean, is she telling the truth? She may be telling the truth, but, you know, I don't recall that conversation, so I guess I can't answer the question." (Richmond Dep. at 85:23-86:11.). Immediately thereafter, after taking a break to consult with counsel on the matter, Defendant raised the issue again and testified: "I just wanted to clarify that, to the best of my recollection, I do not remember having the conversation that we talked about with Chris Odell, so I just wanted to make that clear. I was saying, "I don't recall." I just wanted to make sure I have no recollection of that conversation and that was it." (*Id*. at 86:17-87:13.). Regarding conversations with Mr. Stanley, Defendant testified that he does not recall if he applied pressure on Mr. Stanley to deliver false reports to the index in an attempt to manipulate the price of natural gas. (Richmond Dep. at 87:15-88:14.). When specifically given the opportunity to deny applying pressure on Mr. Stanley to deliver false reports in an attempt to manipulate the price of natural gas, the following exchange ensued:

> Q: "But you didn't testify that you didn't have the conversation. You don't recall having the conversation?"
>
> A: "That is right, I don't recall having that conversation."

(*Id*. at 88:11-15.). Finally, regarding conversations with Ms. Osborn, Defendant testified that he has no recollection of a conversation with Ms. Osborn where he applied pressure on her to make

3

a spread trade work by reporting numbers to the index that would ensure a favorable index being published. (Richmond Dep. at 88:16-90:15.).

Defendant was fully examined by Commission counsel during his earlier testimony and was given every opportunity to deny having the offending conversations. He failed to do so. Moreover, Defendant had access to all the pertinent information regarding the investigation. He had been interviewed in 2003 by Western, was told the allegations that the traders made against him, was suspended by Western because of those allegations, and was later terminated by Western because of those allegations. Later, Western consented to entry of an order finding that:

> From June 1999 through February 2001, two Western traders on Western's Texas trading desk knowingly reported false information to *Gas Daily* at the direction of their supervisor . . . in an attempt to manipulate the price of natural gas by skewing the published index to increase the financial benefit Western derived from certain spread positions traded in the physical marketplace.

(Ex. 10, p.3-4). All of this occurred prior to Defendant's 2004 sworn testimony. As such, the declaration is not based on new information. Finally, the sworn testimony and interrogatory answers reflect no confusion on the part of Defendant. Defendant answered fully and completely, and testified that he understood all questions that he answered unless he asked that the question be re-phrased. (Richmond Dep. 102:9-14) (Ex. 11). These factors, when considered in light of the prior testimony and interrogatory answers, reveals that Defendant submitted a sham declaration, swearing under oath to whatever he needed to swear to in order to avoid summary judgment. As such, the declaration should be disregarded.

**2. Defendant Intended to Manipulate the Price of Natural Gas**

Defendant's argument made in an attempt to negate his clear intent is flawed. Defendant correctly cites *In re Indiana Farm Bureau Coop. Assoc., Inc.*, 1981 CFTC LEXS 69 at *17

4

[1980-1982 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 21,145 (CFTC Jan. 27, 1981), for the proposition that the Commission must prove that Defendant acted with the purpose or conscious object of causing or effecting a price or price trend in the market that did not reflect the legitimate forces of supply and demand (as opposed to legal business activities such as seeking the best price for ones goods and seeking to make a profit from legitimate business activities).[3] In that regard, Defendant's intent to effect the price in that manner is evidenced by him continually monitoring the profitability of the spread trades throughout the month, having a monthly meeting to discuss what prices were necessary for a spread to be profitable, knowing that the published index prices could affect the profitability of a spread trade, monitoring where the index prices came out, regularly following up with Mr. Stanley to ensure that Mr. Stanley reported to Gas Daily, *and most importantly, telling Ms. Osborn to make the spreads "work" and directly instructing Ms. Odell, Mr. Fox, and Mr. Stanley to report false or misleading or knowingly inaccurate information*. No evidence that Mr. Richmond actually profited, or would have profited is required in order to prove his intent. Relevant to Defendant's intent (but not determinative), however, is that Defendant thought he could profit, a thought he clearly entertained. (Richmond Dep. at 59:13-25)(the profitability of an index-based spread trade ultimately depended upon the published index price.). Moreover, ensuring that one's employer continues to earn a profit (as opposed to ensuring that you, yourself earn a profit) is evidence of a profit motive and a motive to enhance one's job performance rating. (Jeffries Dep. at 103:7-14; Richmond Dep. at 50:16-51:10)(Defendant submitted information concerning the profitability of

---

[3] As the Commission pointed out in its Brief in Support, profit motive can be evidence of one's intent, however, as is clear from its Brief in Support, the Commission is relying primarily on defendant's own words and actions to prove his intent.

5

his region to the Vice President of Marketing to obtain a favorable annual performance review.). Again, however, profit motive is not required to prove one's intent to manipulate but can be a factor to assist in determining one's intent.

### 3. Defendant's Attempt to Ensure the Index Reflected the "True Market Price" Amounts to An Illegal Attempt to Manipulate the Price of Natural Gas

On page 17 of his Response Brief, Defendant writes: "According to Ms. Odell, which Mr. Richmond has denied, Mr. Richmond asked her to report higher volumes on trades she made in the Waha area, *with the intent to try to bring the index to a level that would reflect the true market prices in that area*." (emphasis added). Defendant no doubt included this statement in his Response Brief in an attempt to persuade the Court that even if the Court believed Ms. Odell, the Court should not find that Defendant attempted to manipulate the price of natural gas because he only wanted to ensure that "true market prices" were reflected. Defendant's argument is flawed both factually and legally. Factually, Defendant is not the arbiter of what "true market prices" are or should be. He is not qualified to do so, and cannot take it upon himself to assume that role in the market. Legally, only the natural forces of supply and demand can determine true market prices. *See In re Hohenberg Bros., Co.*, 1977 WL 13562 *7, [1975-1977 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 20271 at 21,477 (CFTC Feb. 18, 1977). As such, inserting any information into the marketplace with the intent to affect prices or even to move prices in the direction that one believes that prices should move amounts to an illegal attempt to manipulate. *Id*. Defendant's intent, therefore, even if it was benevolent (although unlikely), nonetheless amounts to the intent to manipulate.

Dated: October 16, 2006  Respectfully submitted,

**UNITED STATES COMMODITY
FUTURES TRADING COMMISSION**

/s/ Michael J. Otten
By:_____

Michael J. Otten, Chief Trial Attorney
Judy T. Lee, Trial Attorney
Commodity Futures Trading Commission
Division of Enforcement
1155 21st Street, NW
Three Lafayette Center
Washington, D.C. 20581
phone: (202) 418-5000/5388
fax: (202) 418-5523

**CERTIFICATE OF SERVICE**

I hereby certify that on October 16, 2006, I electronically filed the foregoing Plaintiff's Reply Brief with the Clerk of Court using the CM/ECF system which will automatically provide an electronic copy to the following counsel for Defendant:

Robert B. Christie, Esq.
rchristie@henderson-lyman.com

Patrick D. Butler, Esq.
pbutler@lammlaw.com

/s/ Michael J. Otten
_____
Michael J. Otten