IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Phillip S. Figa

Civil Action No. 05-cv-00668-PSF-MEH

UNITED STATES COMMODITY FUTURES TRADING COMMISSION,

    Plaintiff,

v.

ANDREW KENNEDY RICHMOND,

    Defendant.

## CONSENT ORDER OF PERMANENT INJUNCTION AND OTHER RELIEF AGAINST ANDREW KENNEDY RICHMOND

### I. BACKGROUND

1. On April 12, 2005, the Commodity Futures Trading Commission ("Commission") filed its complaint against Defendant Andrew Kennedy Richmond ("Richmond") seeking injunctive and other equitable relief, including a civil monetary penalty, for violations of the Commodity Exchange Act, as amended (the "Act"), 7 U.S.C. § 1, *et seq.* (the "Complaint").

2. In particular, the Complaint alleges that during the period beginning in approximately April 2000 and ending in approximately February 2001 (the "relevant period"), Richmond violated Sections 6(c), 6(d) and 9(a)(2) of the Act, 7 U.S.C. §§ 9, 13b, and 13(a)(2), by knowingly delivering or causing to be delivered false or misleading or knowingly inaccurate reports of market information to natural gas price indexes, by attempting to manipulate the price of natural gas, and by aiding and abetting other traders in doing so.

## II. **CONSENTS AND AGREEMENTS**

1.  In order to dispose of all the claims and issues raised in the Complaint and to reach a full and final settlement between the parties without a trial on the merits or further judicial proceedings, Richmond:

   a.  Consents to the entry of this Consent Order of Permanent Injunction and Other Relief ("Order");

   b.  Affirms that he has read and agreed to this Order voluntarily, and that no threat or promise, other than as set forth specifically herein, has been made by the Commission or any member, officer, agent or representative thereof, or by any other person, to induce consent to this Order;

   c.  Acknowledges service of the Summons and Complaint;

   d.  Admits that this Court has jurisdiction over him and the subject matter of this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1;

   e.  Admits that venue properly lies with this Court pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1;

   f.  Waives:

      i.  All claims which may be available under the Equal Access to Justice Act ("EAJA"), 5 U.S.C. § 504, and 28 U.S.C. § 2412 relating to or arising from this action, and any right under EAJA to seek costs, fees and other expenses relating to or arising from this action;

      ii.  Any claim of Double Jeopardy based upon the institution of this proceeding or the entry in this proceeding of any order imposing a civil monetary penalty or any other relief; and

     iii. Any rights of appeal from this Order;

  g. Consents to the continued jurisdiction of this Court for the purpose of enforcing the terms and conditions of this Order, to assure compliance with the Order, and for any other purposes relevant to this case, even if he now or in the future resides outside the jurisdiction;

  h. Agrees that neither he nor any of his agents or employees under his authority or control shall take any action or make any public statement denying, directly or indirectly, any allegation in the Complaint or findings or conclusions in the Order, or creating, or tending to create, the impression that the Complaint or this Order is without a factual basis; provided, however, that nothing in this provision shall affect his (i) testimonial obligation, or (ii) right to take legal positions in other proceedings to which the Commission is not a party.  Richmond shall take all necessary steps to ensure that all of his agents or employees understand and comply with this agreement.

 2. By consenting to the entry of this Order, Richmond neither admits nor denies the allegations of the Complaint or the Findings of Fact and Conclusions of Law contained in this Order, except as to jurisdiction and venue, which he admits.  However, Richmond agrees, and the parties to this Order intend, that the allegations of the Complaint and the Findings of Fact made by this Court shall be taken as true and correct and given preclusive effect, without further proof, in any proceeding in bankruptcy or to enforce the terms of this Order.  Richmond shall provide immediate notice to this Court and the Commission via certified mail of any bankruptcy proceeding

filed by, on behalf of, or against him, and shall provide immediate notice of any change of address, telephone number, or contact information.

### III. FINDINGS OF FACT AND CONCLUSIONS OF LAW

1. The Court, being fully advised in the premises, finds that there is good cause for the entry of this Order and that there is no just reason for delay. The Court therefore directs the entry of Findings of Fact, Conclusions of Law, and a permanent injunction and ancillary relief pursuant to § 6c of the Act, 7 U.S.C. § 13a-1, as set forth herein.

### Findings of Fact

**A. The Commodity Exchange Act**

2. The Act, 7 U.S.C. § 1 *et seq.*, and the Commission's Regulations ("Regulations"), 17 C.F.R. § 1.1 *et seq.*, establish a comprehensive system for regulating the purchase and sale of commodities in interstate commerce or for future delivery on or subject to the rules of a contract market. One of the primary purposes of the Act is to protect against price manipulation.

**B. The Commission**

3. Plaintiff Commission is an independent federal regulatory agency charged with the administration and enforcement of the Act, 7 U.S.C. § 1, *et seq.*, and the Regulations promulgated there under, 17 C.F.R. § 1.1, *et seq.*

**C. Richmond**

4. Richmond resides in Superior, Colorado. During the period of approximately April 2000 through February 2001, Richmond was employed as a

marketing manager at Western Gas Resources, Inc. ("Western") where he traded natural gas and supervised a team of natural gas traders.

**D.     The Natural Gas Price Indexes**

5.     Natural gas is a commodity typically transported in interstate commerce through a network of pipelines across the United States.  During the relevant period, Western bought and sold natural gas for profit and its traders engaged in transactions calling for the actual physical delivery of natural gas ("physical trades").

6.     Physical trades are typically priced with either a fixed price set at the time of the transaction or with reference to an index to be set at a later date.

7.     During the relevant time period, natural gas companies and traders, including Richmond and the traders he supervised, reported natural gas market information to companies that calculated and issued natural gas price indexes ("indexes").

8      The reported market information included price and volume information for natural gas transactions entered into by market participants for delivery at a specific location or hub.

9.     *Gas Daily* is an index widely used by the natural gas industry and its participants during the relevant period.  *Gas Daily* obtained from market participants, including Western's traders, information concerning physical, fixed-price natural gas transactions and calculated a volume-weighted average price index for natural gas pricing/delivery locations.

10. Participants in the natural gas industry widely used these price indexes to determine price and settlement of index trades. Moreover, natural gas futures traders referred to indexes for price discovery and assessing price risks.

11. The price and volume information reported to those indexes was market information that affects or tends to affect the price of natural gas, a commodity in interstate commerce.

### E. Richmond Caused Traders He Supervised to Submit False Reports in an Attempt to Manipulate the Price of Natural Gas

12. In his position as a marketing manager, Richmond encouraged and/or required the traders he supervised to report information concerning Western's natural gas trades to *Gas Daily*. Typically, the traders reported the information to *Gas Daily* over the telephone.

13. During most months of the relevant time period, traders Richmond supervised entered into spread trades. A spread trade involves related transactions at more than one separate pricing/delivery location wherein the difference between the prices at each location is known as the "spread." Frequently, a spread trade remains in place for one month, but its profitability is often judged on a daily basis by referencing the *Gas Daily* index.

14. A potential financial benefit to entering into a spread trade is that a company can make a profit by purchasing natural gas at one pricing/delivery location, transporting it to a second pricing/delivery location, and selling it at a higher price at the second location. If the spread is greater than the cost of transporting the natural gas

from one location to the other, the company can make a profit by capitalizing on price differences, that is, by transporting natural gas to locations where it can be sold at a higher price.

15. If a market participant could manipulate the price of natural gas at one or more of the pricing/delivery locations for which the market participant had entered into a spread trade, the potential profit derived from the spread trade could be greater than it would have been had market forces alone been at work.

16. During the relevant time period, Richmond pressured traders he supervised to knowingly deliver false or misleading or knowingly inaccurate reports of transaction information to *Gas Daily* regarding natural gas pricing/delivery locations for which they had entered into spread trades.

17. Because a single spread trade was typically in place for up to one month, Richmond often applied pressure on the traders on more than one occasion throughout the month for each spread trade that was in place.

18. Each time Richmond pressured the traders to deliver the false or misleading or knowingly inaccurate reports of transaction information to *Gas Daily*, he did so with the intent to manipulate the price of natural gas at one or more pricing/delivery locations for which they had entered into a spread trade. The traders knew that Richmond intended their false or misleading or knowingly inaccurate reports to manipulate the price of natural gas at pricing/delivery locations for which they had entered into a spread trade.

19. Each time Richmond pressured the traders to knowingly deliver false or misleading or knowingly inaccurate reports of transaction information to *Gas Daily*, at

7

least two of the traders succumbed to Richmond's pressure and knowingly delivered false or misleading or knowingly inaccurate reports of transaction information to *Gas Daily*.

20.     When Richmond caused the traders to knowingly deliver false or misleading or knowingly inaccurate reports in an attempt to manipulate the price of natural gas at one or more pricing/delivery locations, Richmond's intent was to manipulate the spread(s) so that profit derived from the spread trade(s) would be greater than it would have been had market forces alone been at work.

21.     If Richmond's attempted manipulation of the price of natural gas had been successful, it could have affected the price of natural gas, a commodity in interstate commerce, and the price of natural gas futures and options contracts traded on the New York Mercantile Exchange ("NYMEX").

## Conclusions of Law

22.     By his conduct set forth above, Richmond violated Section 9(a)(2) of the Act, 7 U.S.C. § 13(a)(2), when he knowingly delivered, or caused to be delivered, false or misleading or knowingly inaccurate reports concerning natural gas transactions to *Gas Daily*.  The false or misleading or knowingly inaccurate reports Richmond delivered, or caused to be delivered, to *Gas Daily* contained market information that affects or tends to affect the price of natural gas, a commodity in interstate commerce.

23.     By his conduct set forth above, Richmond violated Sections 6(c), 6(d), and 9(a)(2) of the Act, 7 U.S.C. §§ 9, 13b and 13(a)(2), when he attempted to manipulate the price of natural gas, a commodity in interstate commerce, by knowingly delivering or

causing to be delivered false, misleading or knowingly inaccurate reports concerning natural gas transactions to *Gas Daily*.

24.     Based on the conduct set forth above, Richmond willfully aided, abetted, counseled or procured the commission of a violation of the Act and acted in combination or concert with the traders he supervised, or willfully caused them to deliver, or cause to be delivered, false or misleading or knowingly inaccurate reports to *Gas Daily* in an attempt to manipulate the price of natural gas in violation of Sections 6(c), 6(d) and 9(a)(2) of the Act, 7 U.S.C. §§ 9, 13b, and 13(a)(2), and is therefore also responsible for such violations pursuant to Section 13(a) of the Act, 7 U.S.C. §13c(a).

## IV. **ORDER FOR PERMANENT INJUNCTION**

With the consent of the Commission and Richmond, it is now hereby ORDERED that:

1.     Richmond is permanently restrained, enjoined and prohibited from directly or indirectly engaging in any conduct that violates Sections 6(c), 6(d), and 9(a)(2) of the Act, 7 U.S.C. §§ 9, 13b, and 13(a)(2), including:

>    Reporting or causing to be reported any false, misleading or knowingly inaccurate information regarding crop or market information or conditions that affect or tend to affect the price of any commodity in interstate commerce; and

>    Manipulating or attempting to manipulate the price of any commodity in interstate commerce or for future delivery on or subject to the rules of a registered entity.

2.     Richmond is permanently restrained, enjoined and prohibited from applying for registration or engaging in any activity requiring such registration, or acting

as a principal (as defined by the National Futures Association Registration Rule 101) of any registered entity or person, or entity or person required to be registered.

3. Richmond is permanently restrained, enjoined and prohibited from directly or indirectly trading on or subject to the rules of any registered entity, as that term is defined in Section 1a(29) of the Act, 7 U.S.C. § 1a(29), in any account:

    a. that is held in the name of Richmond;

    b. in which Richmond has a direct or indirect financial interest; or

    c. held in the name of any other person.

4. The injunctive provisions of this Order shall be binding on Richmond, upon any person acting in the capacity of officer, agent, servant, or employee of Richmond, and upon any person who receives actual notice of this Consent Order by personal service or otherwise insofar as he or she is acting in active concert or participation with Richmond.

## V. ORDER FOR CIVIL MONETARY PENALTY AND OTHER ANCILLARY RELIEF

With the consent of the Commission and Richmond, IT IS NOW HEREBY ORDERED that Richmond shall comply fully with the following terms, conditions and obligations relating to the payment of a civil monetary penalty:

1. A civil monetary penalty in the amount of sixty thousand dollars ($60,000) is assessed against Richmond, and is due and owing thirty days from the date of entry of this Order.

2. Post-judgment interest authorized by Section 6c of the Act, 7 U.S.C. § 13a-1, shall accrue beginning on the date payment is due and shall be determined by

using the Treasury Bill rate prevailing on the date of this Order pursuant to 28 U.S.C. § 1961.

3.      Richmond shall pay this penalty by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order.  If payment is to be made by other than electronic funds transfer, the payment shall be made payable to the Commodity Futures Trading Commission and sent to the address below:

> **Commodity Futures Trading Commission**
> **Division of Enforcement**
> **ATTN: Marie Bateman – AMZ-300**
> **DOT/FAA/MMAC**
> **6500 S. Macarthur Blvd.**
> **Oklahoma City, OK 73169**

If the payment is to be made by electronic funds transfer, Richmond shall contact Marie Bateman at 405-954-6569 for instructions.  Richmond shall accompany the payment of the penalty with a cover letter that identifies Richmond and the name and docket number of this proceeding.  Richmond shall simultaneously transmit a copy of the cover letter and the form of payment to:  Office of Cooperative Enforcement, Division of Enforcement, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, N.W., Washington, D.C. 20581.

## VI.  MISCELLANEOUS PROVISIONS

1.      <u>Notices.</u>  All notices required by this Order shall be sent by certified mail, return receipt requested, as follows:

> a.      Notice to Plaintiff Commission:
> Division of Enforcement
> Commodity Futures Trading Commission
> 1155 21st Street, NW
> Washington, DC 20581

        b.      Notice to Defendant Andrew Kennedy Richmond:
            c/o Robert B. Christie
            Henderson & Lyman
            175 West Jackson, Suite 240
            Chicago, IL 60604

2.    <u>Counterparts.</u>  This Order may be executed by the parties in counterparts and by facsimile.

3.    <u>Entire Agreement, Amendments and Severability.</u>  This Order incorporates all of the terms and conditions of the settlement among the parties and shall not be amended except by order of the Court.

4.    <u>Invalidation.</u>  If any provision of this Order, or if the application of any provisions or circumstances, is held invalid, the remainder of the Order and the application of the provisions to any other person or circumstance shall not be affected by the holding.

5.    <u>Waiver.</u>  The failure of any party hereto at any time or times to require performance of any provision hereof shall in no manner affect the right of such party at a later time to enforce the same or any other provision of this Order.  No waiver in one or more instances of the breach of any provision contained in this Order shall be deemed to be or construed as a further or continuing waiver of such breach or waiver of the breach of any other provision of this Consent Order.

6.    <u>Continuing Jurisdiction of this Court.</u>  The Court shall retain jurisdiction of this cause to assure compliance with this Order and for all other purposes related to this action.

WHEREFORE, there being no just reason for delay, the Clerk of the Court is hereby directed to enter this Consent Order of Permanent Injunction and Other Relief Against Defendant Andrew Kennedy Richmond.

Dated: February 13, 2007

s/ Robert B. Christie
_____

Robert B. Christie (Lead Attorney)
Henderson & Lyman
175 West Jackson, Suite 240
Chicago, IL 60604
(312) 986-6960
rchristie@henderson-lyman.com
Counsel for Defendant

Dated: February 13, 2007

s/ Andrew K. Richmond
_____
Andrew Kennedy Richmond

Dated: March 5, 2007

s/ Michael J. Otten
_____
Michael J. Otten (Lead Attorney)
Judy T. Lee
Commodity Futures Trading Commission
1155 21sr Street, NW
Washington, D.C. 20581
(202) 418-5000/5388
motten@cftc.gov
jlee@cftc.gov
Counsel for Plaintiff

BY THE COURT:

*s/ Lewis T. Babcock / for*

Dated: 3/20/07

_____
Phillip S. Figa
United States District Judge

13